UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A.C., a minor, by her NEXT FRIEND,
MICHELLE WHITE,

                Plaintiff,

and

QUALITY CARE CONSULTING, INC.,

                Intervening Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign insurance
company,

                Defendant.

Case No. 12-CV-13896
Hon. Lawrence P. Zatkoff
Magistrate Hluchaniuk

_____/

**MILLER & TISCHLER, P.C.**
MAUREEN H. KINSELLA P56172
Attorneys for Plaintiff
28470 W. 13 Mile Rd., Ste. 300
Farmington Hills, MI 48334
(248) 945-1040
mkinsella@msapc.net


CLARK & SCHOENBECK, P.C.
PAUL S. CLARK P39164
Attorneys for Quality Care Consulting
22655 South Chrysler Drive
Hazel Park, MI 48030
(248) 543-7776
pclark@cs-law.net

**ZAUSMER, KAUFMAN, AUGUST
& CALDWELL, P.C.**
CINNAMON A. RICE P60979
LYNNE S. DEBELL P64728
APRIL E. MOORE P69297
Attorneys for Defendant
31700 Middlebelt Rd., Ste. 150
Farmington Hills, MI 48334
(248) 851-4111
crice@zkact.com
Nfink@zkact.com
amoore@zkact.com

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff A.C., a minor, by her NEXT FRIEND, MICHELE WHITE, by and through her attorneys, MILLER & TISCHLER, P.C., for her Response to Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY's ("State Farm") Motion for Partial Summary Judgment, states as follows:

By its motion and brief in support, State Farm fails to offer any valid argument or evidence that the services provided to A.C. by her mother, Michele White, are not allowable expenses pursuant to MCL 500.3107(1)(a). Rather, State Farm ignores the specifics of this case and the extent of A.C.'s injuries and impairments; instead trying to convince the Court that the services being provided by Mrs. White are merely "ordinary" tasks. The facts belie State Farm's assertions.

This case was brought because State Farm chronically ignores the facts of A.C.'s injuries and the expert medical opinions of A.C.'s medical treaters. State Farm's claims adjuster and/or counsel have presumed that their own medical expertise is superior to that of A.C.'s medical treaters. It is with this same arrogance that State Farm brings the subject motion for partial summary judgment regarding certain services provided to A.C. by Mrs. White.

2

The services Mrs. White provides to A.C. are necessitated by the injuries A.C. sustained in the subject motor vehicle accident. These services and the corresponding expenses are of wholly new essential character that satisfies the statutorily required causal connection that expenses be for the injured person's care, recovery, or rehabilitation pursuant to MCL 500.3107(1)(a). As such, the expenses are an allowable expense and payable by State Farm.

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion for Partial Summary Judgment.

Respectfully submitted,

MILLER & TISCHLER, P.C.

/s/ Maureen H. Kinsella
BY: MAUREEN H. KINSELLA  P56172
Attorney for Plaintiff
28470 W. 13 Mile Rd., Ste. 300
Farmington Hills, MI 48334
DATED:  September 4, 2013          (248) 945-1040

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A.C., a minor, by her NEXT FRIEND,
MICHELLE WHITE,

Plaintiff,                         Case No. 12-CV-13896

and                                Hon. Lawrence P. Zatkoff
                                   Magistrate Hluchaniuk

QUALITY CARE CONSULTING, INC.,

            Intervening Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign insurance
company,

            Defendant.
                                                                    /

| | |
|---|---|
| **MILLER & TISCHLER, P.C.** | **ZAUSMER, KAUFMAN, AUGUST** |
| MAUREEN H. KINSELLA P56172 | **& CALDWELL, P.C.** |
| Attorneys for Plaintiff | CINNAMON A. RICE P60979 |
| 28470 W. 13 Mile Rd., Ste. 300 | LYNNE S. DEBELL P64728 |
| Farmington Hills, MI 48334 | APRIL E. MOORE P69297 |
| (248) 945-1040 | Attorneys for Defendant |
| mkinsella@msapc.net | 31700 Middlebelt Rd., Ste. 150 |
| | Farmington Hills, MI 48334 |
| | (248) 851-4111 |
| CLARK & SCHOENBECK, P.C. | crice@zkact.com |
| PAUL S. CLARK P39164 | Nfink@zkact.com |
| Attorneys for Quality Care Consulting | amoore@zkact.com |
| 22655 South Chrysler Drive | |
| Hazel Park, MI 48030 | |
| (248) 543-7776 | |
| pclark@cs-law.net | |

                                                                    /

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF EXHIBITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF
SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.      FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      Rule 56 Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . 8

        B       Despite State Farm's Protestations to the Contrary, the Services Mrs.
                White Provided to A.C. Are Allowable Expenses Incurred for A.C.'s
                Care, Recovery or Rehabilitation and Are Reimbursable under the
                Michigan No-Fault Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

# INDEX OF AUTHORITIES

**Cases** **Page**

*Admire v Auto-Owners Insurance Company*,
494 Mich. 10; 831 N.W.2d 849 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242; 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986) . . . . . . . . . . . . . . . . . . . 8

*Biegas v. Quickway Carriers, Inc.*,
573 F.3d 365 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Douglas v. Allstate Insurance Company*,
492 Mich 241; 821 N.W.2d 472 (2012) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13

*Griffith v State Farm Mutual Automobile Insurance Co*,
472 Mich. 521; 691 N.W.2d 895 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

*Van Marter v. American Fidelity Fire Insurance Company*,
114 Mich. App. 171; 318 N.W.2d 679 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Visconti v Detroit Automobile Inter-Insurance Exchange*,
90 Mich. App. 477; 282 N.W.2d 360(1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

MCL 500.3105(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

MCL 500.3107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

MCL 500.3107(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

MCL 500.3107(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 14, 17

MCL 500.3107(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

**Rules**

Fed. R. Civ. P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ii

## INDEX OF EXHIBITS

**Exhibit A** - Dr. Gilmer's Assessment of Attendant Care/Personal Care Needs

**Exhibit B** - Dr. Pelshaw's prescription for Attendant Care

**Exhibit C** - 7/25/12 Clinic Letter

**Exhibit D** - Prescription

**Exhibit E** - Dr. Gilmer deposition transcript

**Exhibit F** - M. White deposition transcript

**Exhibit G** - Skilled Nurse Assessment Report

**Exhibit H** - Attendant Care Log

**Exhibit I** - Summary of Neuropsychological Assessment

## **STATEMENT OF ISSUES PRESENTED**

A.  Whether, despite State Farm's protestations to the contrary, the services Mrs. White provided to A.C. are allowable expenses for A.C.'s care, recovery or rehabilitation and are reimbursable under the Michigan No-Fault Act?

Plaintiff Answers "Yes."

Defendant Answers "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY
## FOR RELIEF SOUGHT

### Cases

*Admire v Auto-Owners Insurance Company*, 494 Mich. 10; 831 N.W.2d 849 (2013)

*Douglas v. Allstate Insurance Company*, 492 Mich 241; 821 N.W.2d 472 (2012)

### Statute

MCL 500.3107(1)(a)

### Rule

Fed. R. Civ. P. 56(a)

v

## I.    FACTUAL BACKGROUND

This case involves Defendant State Farm's refusal to respect the medical orders

for A.C. - an 8 year old girl who suffered a severe traumatic brain injury when just 8

months old. A.C.'s treatment team includes noted Beaumont pediatric neurosurgeon,

Holly S. Gilmer, MD, and Children's Hospital pediatric physiatrist Charles Pelshaw,

MD. These physicians prescribed care and supervision services to help A.C. live with

significant physical and cognitive impairments from a severe traumatic brain injury.

(**Exhibit A** - Dr. Gilmer's Assessment of Attendant Care/Personal Care Needs;

**Exhibit B** - Dr. Pelshaw's prescription for Attendant Care). By way of explaining

why A.C. needs Attendant Care and the amount of attendant care she needs, Dr.

Pelshaw noted as follows:

> I do think that twelve hours of attendant care is warranted.
> Everything from assisting with managing her hair, brushing
> her teeth, squeezing toothpaste, reminders to spit the
> toothpaste out, undressing, unable to put on underwear or
> unable to put on socks (sic) clearly her bathing, her
> balance, inability to maneuver stairs independently (sic) all
> clearly support the fact that she needs someone with her at
> all time. (**Exhibit C** - 7/25/12 Clinic Letter)

Recently, Dr. Pelshaw even noted in a prescription that A.C. requires care during all

"non-school hours." (**Exhibit D** - Prescription). Dr. Gilmer has also offered her

opinion as to why and how much Attendant Care A.C. requires:

1

Q      So are you able to tell me how much time she would have needed back -- I know now you haven't seen her in like a year, but back when you last saw her?

A      How much time would she have needed for what?

Q      For attendant care.

A      Oh.

                    * * *

Q      I guess what type would she need.

A      Well, other than the time that [A.C.] is in school, she will have to always have someone in the room with her really at all times. She doesn't walk normally, but she moves fast and she has no judgment. And, you know, so she really has to be watched. I wouldn't take out entirely the hours that she's sleeping because kids with head injury and hydrocephalus don't sleep normally. A lot of the time they don't sleep during the night, sometimes they'll get up and wander, **so she's really almost twenty-four hours except when she's at school, but then she's not in school on holidays and weekends.**

Q      And what would she need?

A      Whenever she's not in school, she will need attendant care.

Q      With what types of things?

A      Supervision, bathing, dressing. She can -- I believe she can feed herself. She can feed herself finger foods for sure. I don't know how well she uses a

2

> knife and fork and spoon. In fact, I don't think I'd
> give [A.C.] a knife. She may be able to get a spoon
> to her mouth pretty well, she may not. Mother might
> have to help her use it. (**Exhibit E** - Dr. Gilmer
> deposition transcript, pp 35-36)

A.C.'s mother, Michele White, testified as to A.C.'s need for assistance with eating:

> Q     What type of food do you have to actually assist
>        Alexia with eating?
>
> A     If it's breakfast, if I feed her cereal, I have to assist
>        her with that.
>
> Q     Okay. Tell me how you have to assist her.
>
> A     I have to actually scoop the cereal, hold her hand
>        and kind of direct her with the spoon in order for her
>        not to spill the milk.
>
> Q     What other type of foods?
>
> A     Sometimes I have to assist her with scrambled eggs.
>
> Q     And why do you have to assist her with scrambled
>        eggs?
>
> A     Because she doesn't get the concept of, with the fork
>        she can't poke it, stab it.
>
> Q     Okay. She can't pick up the food with a fork?
>
> A     Right.
>
> Q     Okay. Are there certain foods that she can eat
>        independently?

3

A    Yes.

Q    Okay.  What foods can she eat independently?

A    Sandwiches, sometimes we get them corn dogs to
     eat.  I'm trying to think of what else.  Chicken
     nuggets, a hamburger.  That's basically, typically,
     what she can pick up on her own.

                    * * *

Q    It sounds like whatever she can pick up by her hand
     she can eat?

A    Right.

                    * * *

Q    Are there any other dinner items that you have to
     assist her with actually feeding her?

A    Well, when I make dinner for the whole family it's
     like, like spaghetti I have to assist her with,
     macaroni and cheese.  If we have any type of meats,
     I have to cut it up for her, which she does not use
     utensils.  When it comes to meat, she'll just pick it
     up with her fingers.  But there's other things like
     spaghetti, like I said, that I have to assist her with.
     (**Exhibit F** - M. White deposition transcript, pp 9 -
     13).

Dr. Gilmer also testified as to the extent A.C. requires supervision:

A    Let's see.  The question specifically asks in your
     professional opinion does Alexia require supervision
     for fall prevention and I said yes.  In excess of the
     parental supervision typically required for a six or
     seven-year-old.

                         4

Q    And if so, why.

A    Well, I already stated that she has the left
     hemiparesis, she has impaired balance, she tries to
     go faster than she can, she has no concept of her
     own limitations and poor judgment.   She has
     impulsiveness.  So she's at high risk for falls and
     most six or seven-year-olds are not.  (**Exhibit E**, p
     39).

Dr. Gilmer also testified as to A.C.'s need for assistance with homework:

Q    Doctor, you mentioned in response to a question that
     Alexia has trouble focusing.  Do you understand
     that's as a result of her traumatic brain injury?

A    Yes.

Q    And what kind of functions would you expect would
     be impaired because of her trouble focusing?

A    Learning, staying at any particular task, completing
     a task, **completing her homework**, if she's given
     homework, completing her assignments in school.

Q    Would you expect that given her trouble focusing
     due to her brain injury she would require assistance
     with those activities?

A    Yes.  (**Exhibit E**, p 48).

In addition to Drs. Gilmer and Pelshaw's prescription, A.C. underwent a

skilled nursing assessment conducted by expert pediatric rehabilitation nurse

Margaret Davis, R.N., CM. (**Exhibit G** - Skilled Nurse Assessment Report) After

5

noting A.C.'s medical diagnoses ("TBI, Hydrocephalus, Left Hemiplegia") and conducting a 4.5 hour assessment of A.C., Ms. Davis reached the following conclusion:

Nursing Diagnoses:
- Impaired mobility r/t neuromuscular deficits, Left Hemiparesis, and TBI 2° MVA
- Self-care Deficit: Bathing, Hygiene, Dressing, Grooming, Toileting, r/t neuromuscular deficits, Left Hemiparesis and TBI 2° MVA
- Risk For Injury: trauma r/t kinesthetic deficits , Left Hemiparesis, and TBI 2° MVA
- Impaired verbal communication r/t TBI 2° MVA
- Risk for parental caregiver role strain r/t child with Left Hemiparesis and TBI 2° MVA
- Altered Growth and Development r/t Left Hemiparesis and TBI 2° MVA
- Sensory/Perceptual Alterations: kinesthetic r/t Left Hemiparesis and TBI° 2 MVA
- Impaired Social Interaction: attention deficits, language deficits, gross motor deficits r/t Left Hemiparesis and TBI 2° to MVA
- High risk for falls r/t neuromuscular deficits, left hemiparesis, and TBI 2° MVA
- Thought Process Altered r/t TBI 2° MVA

**(Exhibit G)**

Additionally, Ms. Davis noted that while A.C. is biologically 8 years old, she is developmentally that of a toddler functionally, cognitively, and socially. "The safety issues regarding [A.C.] are unique in that she is ambulatory. Considering A.C.'s developmental delay and neuro-functional deficits, currently she is at very high risk for falls which may result in a possible 2nd brain injury or fractures." **(Exhibit G)**. Ms. Davis recommended care for "12 hours daily for supervision and fall/injury prevention, and assist with ADL's. [activities of daily living]" **(Exhibit G)**.

6

The fact that A.C. is developmentally on par with a 2 or 3 year old was echoed by Dr.

Gilmer who said:

> Q    Doctor, have you seen the attendant care needs of
>      Alexia grow over time or increase?
>
> A    The needs increase. **I think of Alexia as a two-
>      year-old**. She really is kind of like an active
>      two-year-old, but as she gets bigger, then trying to
>      take care of a big kid or an adult who acts like a
>      two-year-old is harder. So I don't know that her --
>      she has increased needs, **but it's more work and
>      more time to do the same things that her mother
>      was doing for her when she was a baby**. (**Exhibit
>      E**, p 49).

Despite this resounding concurrence by A.C.'s medical treaters that she

requires, at a minimum, twelve hours of Attendant Care on a daily basis, State Farm

refuses to pay for the prescribed services. One can only presume that State Farm's

claims adjuster and/or counsel assume their medical expertise is superior to that of

Drs. Gilmer and Pelshaw and Ms. Davis in determining A.C.'s care needs. As a result

of State Farm's refusal, this lawsuit was initiated.

State Farm, in the continuing vein of putting its "medical" conclusions ahead

of actual medical treaters, now moves for partial summary judgment arguing that

certain of the services provided to A.C. are not care for A.C. due to her severe

traumatic brain injury but instead are simple, ordinary household help that any

uninjured person would need. Summary judgment is inappropriate because the services provided by Mrs. White to A.C. are in no way "ordinary" tasks typically performed for an 8 year old girl by a parent. Rather, these services are required for A.C.'s care, rehabilitation and recovery due to the injuries she sustained in the motor vehicle accident. By its motion, State Farm is merely seeking this Court's affirmation of State Farm's deplorable handling of A.C.'s claim for No-Fault insurance benefits.

## II.    LEGAL ARGUMENT

### A.    Rule 56 Summary Judgment Standard

Summary judgment should be granted if the admissible evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all facts and draw all reasonable inferences in favor of the nonmovant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52; 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986). When "'reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009).

8

**B.  Despite State Farm's Protestations to the Contrary, the Services Mrs. White Provided to A.C. Are Allowable Expenses Incurred for A.C.'S Care, Recovery or Rehabilitation and Are Reimbursable under the Michigan No-Fault Act.**

MCL 500.3105(1) establishes that an insurance provider is liable under the no-fault act "to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." Accordingly, MCL 500.3105(1) imposes two threshold causation requirements for personal protection insurance ("PIP") benefits. MCL 500.3107(1) limits what benefits are compensable as PIP benefits, allowing unlimited lifetime benefits for "allowable expenses" but limiting "ordinary and necessary services" to a three-year period after the accident and to a $20 daily limit:

> Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
>
> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. . .
> * * *
>
> (c) Expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent.

9

By its motion, State Farm would have this Court rule that certain of the services Mrs. White provided to A.C. are ordinary and necessary services (commonly referred to as replacement services) as defined by MCL 500.3107(1)(c) rather than the allowable expenses commonly referred to as Attendant Care services as set forth in MCL 500.3107(1)(a). The services State Farm would have classified as replacement services are: "driving; preparing breakfast, lunch and dinner; assistance with homework; assistance with educational activities; laundry (washing bedding and clothes); watching television with Plaintiff and family; and preparing Plaintiff's bed." While at first glance, some of these services may appear to be replacement services, upon consideration of the extent and seriousness of A. C.'s injuries it becomes clear that the services are allowable expenses for A.C.'s care, recovery or rehabilitation.

In *Douglas v. Allstate Insurance Company*, 492 Mich 241; 821 N.W.2d 472 (2012), the Michigan Supreme Court defined the "care, recovery or rehabilitation" requirements for a service to be considered Attendant Care:

> MCL 500.3107(1)(a) requires that allowable expenses must be "for an injured person's care, recovery, or rehabilitation." As we explained in *Griffith v State Farm Mutual Automobile Insurance Co*, [472 Mich. 521; 691 N.W.2d 895 (2005)] "expenses for 'recovery' or 'rehabilitation' are costs expended in order to bring an insured to a condition of health or ability sufficient to resume his preinjury life," while expenses for "care" "may not restore a person to his preinjury state." While the

10

dictionary definition of "care" "can be broadly construed to encompass *anything* that is reasonably necessary to the provision of a person's protection or charge," because MCL 500.3107(1)(a) "specifically limits compensation to charges for products or services that are reasonably necessary for an *injured person's* care, recovery, or rehabilitation[,] . . . [t]his context suggests that 'care' must be related to the insured's injuries." In comparing the definition of "care" to the definitions of "recovery" and "rehabilitation," we concluded that

> "[c]are" must have a meaning that is broader than "recovery" and "rehabilitation" but is not so broad as to render those terms nugatory. . . . "[R]ecovery" and "rehabilitation" refer to an underlying injury; likewise, the statute as a whole applies only to "an injured person." It follows that the Legislature intended to limit the scope of the term "care" to expenses for those products, services, or accommodations whose provision is necessitated by the injury sustained in the motor vehicle accident. "Care" is broader than "recovery" and "rehabilitation" because it may encompass expenses for products, services, and accommodations that are necessary because of the accident but that may not restore a person to his preinjury state.

We reaffirm here *Griffith's* definition of "care" as it relates to the scope of allowable expenses: although services for an insured's care need not restore a person to his preinjury state, the services must be related to the insured's injuries to be considered allowable expenses.

*Douglas*, 492 Mich at 259-260 (citations omitted).

11

The *Douglas* Court, citing *Visconti v Detroit Automobile Inter-Insurance Exchange*, 90 Mich. App. 477; 282 N.W.2d 360(1979), noted that "ordinary household tasks that a family member performs are not allowable expenses, but serving meals in bed and bathing, dressing, and escorting a disabled person are not ordinary household tasks and can therefore be considered allowable expenses pursuant to MCL 500.3107." *Douglas*, 492 Mich at 261 (quotations omitted). The *Douglas* Court further noted that in *Van Marter v. American Fidelity Fire Insurance Company*, 114 Mich. App. 171; 318 N.W.2d 679 (1982), the plaintiff was allowed to recover PIP benefits when a family member was:

> required to serve his meals in bed, bathe him, escort him to the doctor's office, exercise him in conformity with his doctor's instructions, assist in formulating his diet, administer medication, and assist him with speech and associational therapy.

*Douglas*, 492 Mich at 261 (quotations omitted).

In *Admire v Auto-Owners Insurance Company*, 494 Mich. 10; 831 N.W.2d 849 (2013), the Michigan Supreme Court addressed the issue of whether the expense of a van modified to accommodate an injured person's wheelchair was an allowable expense for the injured person's care, recovery or rehabilitation or whether just the costs of the modifications to the van were an allowable expense. The Court found that "[b]ecause the base price of the van is an ordinary transportation expense - an

12

expense that is as necessary for the uninjured as the injured - and is easily separated from the modifications, defendant is not required to pay for it under the no-fault insurance act." *Id.* at 14. In further discussing allowable expenses, the Court stated that the "language suggests that any product, service, or accommodation consumed by an uninjured person over the course of his or her everyday life cannot qualify because it lacks the requisite causal connection with effectuating the injured person's care, recovery, or rehabilitation." *Id.* at 26. "Postaccident expenses of a wholly new essential character satisfy the statutorily required causal connection that expenses be for the injured person's care, recovery, or rehabilitation." *Id.* at 30.

In the present case, the services State Farm would have this Court rule to be replacement services are in fact allowable expenses for A.C.'s care, recovery or rehabilitation. Pursuant to *Douglas* and *Griffith*, these expenses were for products, services or accommodations whose provision is necessitated by the injuries sustained in the motor vehicle accident. The services State Farm complains of are: "driving; preparing breakfast, lunch and dinner; assistance with homework; assistance with educational activities; laundry (washing bedding and clothes); watching television with Plaintiff and family; and preparing Plaintiff's bed," each of which are allowable expenses.

13

While driving is an ordinary service an 8 year old child might require, the reason A.C. is required to be driven is of a wholly new essential character than the reason a typical 8 year might need to be driven. Given her limited mobility and balance issues, A.C. is at a high risk of suffering falls. (**Exhibit G**) As such, she cannot walk any distance and certainly cannot walk unassisted or unsupervised. Further, a review of the Attendant Care Log submitted to State Farm by Mrs. White demonstrates that A.C. requires assistance in getting in and out of the car, schools and any area where she could loose her balance. (**Exhibit H**). As such, Mrs. White's having to drive A.C. is necessitated by the injuries A. C. suffered in the motor vehicle accident and the expense incurred in providing this driving is an allowable expense pursuant to MCL 500.3107(1)(a).

Further, in *Admire*, the Michigan Supreme Court specifically noted that transportation expense may be recoverable under MCL 500.3107(1)(a). "Medically necessary transportation needs represent a change in character from the plaintiff's preinjury requirements because the trips would not have been necessary in a life unmarred by injury." *Admire*, 494 Mich. at 32.

As for the services Mrs. White provides to A.C. for preparing breakfast, lunch and dinner, the deposition testimony of Dr. Gilmer and Mrs. White clearly sets forth that A.C. cannot feed herself anything but finger food. This is vastly different than

14

a usual 8 year old. Dr. Gilmer even goes so far as to testify that she would not entrust A.C. with a knife. A review of the Attendant Care Log shows that in addition to assisting A.C. with the use of utensils, Mrs. White also prepares A.C.'s food by cutting it into manageable portions. (**Exhibit H**). Clearly, a typical 8 year old can feed himself/herself and does not require his/her food to be cut into manageable portions. A.C.'s need for assistance in the preparation of food and in feeding herself is a change in the character of A.C.'s preinjury requirements as she would not need assistance in eating in a life unmarred by injury.

State Farm also complains that assistance with homework and assistance with educational activities is not an allowable expense. Dr. Gilmer specifically testified that given A.C.'s trouble focusing due to her brain injury, she would require assistance with those activities. (**Exhibit E**, p 48). Additionally, A.C. underwent a neuropsychological assessment wherein Angela DeBastos, Ph.D., found that A.C. required individualized instruction and support to make developmental progress. (**Exhibit I** - Summary of Neuropsychological Assessment, p 5). Dr. DeBastos further cautioned that parents and teachers will need to continue to serve as models for the development of new skills. (**Exhibit I** - p 5). As is typical of its claims handling throughout, State Farm ignores the recommendations and opinions of A.C.'s medical providers and argues that Mrs. White's assistance with homework and educational

15

activities are ordinary necessary services. Clearly, the assistance A.C. requires goes far beyond and is of a wholly new character of any assistance a typical 8 year-old would require.

State Farm challenges Mrs. White doing laundry (washing bedding and clothes) and preparing A.C.'s bed as not being an allowable expense. A.C. is still not potty trained. (**Exhibit F** - p. 42). Her cognitive deficits inhibit her ability and follow-through to maintain her bowel and bladder. She also testified that she prepares A.C.'s bed on a nightly basis. This entails putting on clean sheets, making sure A.C. is in the bed correctly so that she will not fall out. A.C. has to be in a certain position so that she will stay safely in the bed. (**Exhibit F** - p 30). As A.C. has left sided-hemiparesis, as testified to by Dr. Gilmer, her mother must place her into bed, position her, tuck sheets in around her and use a bed rail to maintain her safety. She must change the linens - not like the mother of an uninjured 8 year old - but the care provider of an 8 year old with a severe traumatic brain injury, who is often incontinent, and cannot change her own linens.

Clearly, A.C.'s requirements as far as laundry and being put to bed far exceed that of a typical 8 year-old. These services are of a new character than A.C. would have required had she not suffered a severe traumatic brain injury and are necessitated by the injuries sustained in the motor vehicle accident.

16

Finally, State Farm argues that Mrs. White watching television with A.C. is not an allowable expense. A.C. is developmentally a toddler (**Exhibit G**); she has impaired balance; she tries to go faster than she can; she has no concept of her own limitations and poor judgment; she is impulsive and at high risk for falls.(**Exhibit E**, p 39). Clearly, A.C. is in need of supervision at all times, whether she is watching television or not. Where a typical 8 year-old can watch television with their parent in the next room or even another floor of the home, A.C. cannot. The need for supervision is directly necessitated by the motor vehicle accident. Mrs. White's provision of supervision is an allowable expense pursuant to MCL 500.3107(1)(a).

## III.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion for Partial Summary Judgment.

Respectfully submitted,

MILLER & TISCHLER, P.C.

/s/ Maureen H. Kinsella
BY: MAUREEN H. KINSELLA  P56172
Attorney for Plaintiff
28470 W. 13 Mile Rd., Ste. 300
Farmington Hills, MI 48334
DATED:   September 4, 2013         (248) 945-1040/ fax (248) 536-5042
mkinsella@msapc.net

17

**CERTIFICATE OF SERVICE**

The undersigned certifies that she electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will send notice of said filing to all parties of record on September 4, 2013 I declare under the penalty of perjury that the statement above is true to the best of my knowledge, information and belief.

BY:____ U.S. Mail ____ Facsimile __XX__ ECF ____ Certified

/s/
EVELYN HOY

18